UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Ann Pigulski

   v.                                Civil No. 18-cv-1061-LM
                                     Opinion No. 2019 DNH 097
Johnson & Johnson, Inc. and
Ethicon, Inc.


**O R D E R**

Ann Pigulski brings this product liability action against Johnson & Johnson, Inc. and its subsidiary, Ethicon, Inc., alleging claims for injuries caused by defendants' pelvic mesh products. Pigulski asserts thirteen claims based on various theories of liability. Defendants move to dismiss eight of Pigulski's claims. Pigulski objects.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, draw all reasonable inferences from those facts in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth 'a plausible claim upon which relief may be granted.'" Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Pigulski alleges that she was diagnosed with stress urinary incontinence. In June 2010, she underwent a surgical repair procedure that used a GYNECARE TVT Retropubic System Tension-Free vaginal tape sling, a device containing mesh products that defendants manufactured and sold. Pigulski had a second surgical procedure in November 2015 to remove and revise the sling. She had a third surgery in September 2017 because the mesh had eroded.

Pigulski alleges that defendants market their mesh products to the medical community and directly to patients as safe and reliable medical devices. She states that defendants have marketing campaigns and strategies aimed at health care providers and also have direct consumer marketing to get consumers to seek out their products. She further alleges that defendants concealed and misrepresented the risks, dangers, and defects of their products, which caused serious medical problems for patients, including her. She lists fifteen defects in the products and twenty-one risks and complications that caused the products to be defective.

In short, Pigulski alleges that defendants' products, including those used in her surgeries, were unsafe and that defendants knew they were unsafe. She also alleges that if she had known of the dangers and risks, she would not have used the products for her surgery.

Pigulski brings thirteen counts in the following order: (1) Negligence; (2) Strict Liability, Manufacturing Defect; (3) Strict Liability, Failure to Warn; (4) Strict Liability, Defective Product; (5) Strict Liability, Design Defect; (6) Negligent Misrepresentation; (7) Negligent Infliction of Emotional Distress; (8) Breach of Express Warranty; (9) Violation of the New Hampshire Consumer Protection Act ("CPA"), RSA 358-A; (10) Gross Negligence; (11) Unjust Enrichment; (12) Discovery Rule and Tolling; and (13) Breach of Implied Warranty.[1]

**DISCUSSION**

Defendants move to dismiss Counts I, IV, VI, VII, VIII, IX, X, and XIII. In support, they argue that: (1) the claims are not actionable under New Hampshire law, which law applies to all

---

[1] Pigulski's breach of implied warranty claim is mistakenly labeled as Count XII in the complaint. Because Pigulski alleged her claim for application of both the discovery rule and tolling in Count XII, the court will refer to Pigulski's breach of implied warranty claim as Count XIII.

3

claims; and (2) the claims are duplicative.  Pigulski disputes
both arguments.

I. Choice of Law

As a preliminary matter, defendants raise a choice-of-law
issue, arguing that New Hampshire law governs Pigulski's
"substantive claims."  Defendants note that Pigulski
specifically references New Hampshire law in the allegations in
support of Count IV, see doc. no. 1 at ¶ 109, and brings a claim
under the New Hampshire CPA, RSA 358-A, see id. at ¶¶ 147-165.
In addition, defendants argue that the facts alleged in the
complaint support application of New Hampshire substantive law
under a choice-of-law analysis.  Despite their arguments,
however, defendants state in a footnote that they reserve "the
right to assert the application of another state's law to
certain of Plaintiff's claims, such as application of New Jersey
law . . . ."  Doc. no. 13-1 at 5 n.4.

In her objection, Pigulski states:  "For purposes of this
motion and opposition only, Plaintiff will assume that New
Hampshire law applies."  Doc. no. 15 at 6.  Pigulski states that
she "reserves the right to assert the application of another
state's law at a later time."  Id.

Contrary to the parties' theories, the court will not
proceed under New Hampshire law at this stage of the case only

4

to potentially change course and apply the law of another state at a later time.  In certain circumstances, such as when the facts alleged are complex or the governing law likely depends on discovery, it may be premature for the court to determine the governing law at the motion to dismiss stage.  See, e.g., Picone v. Shire PLC, No. 16-CV-12396-ADB, 2017 WL 4873506, at *15 (D. Mass. Oct. 20, 2017) (declining to engage in choice-of-law analysis in light of "the complex nature of the facts alleged, including the nature of the purported unlawful conduct and resulting harm").  Here, however, those circumstances do not exist.

Pigulski makes no argument that the law of any other state governs her claims and, indeed, specifically references New Hampshire law in her allegations in support of two of her claims.  Defendants only mention New Jersey as an example with no developed argument to support applying that state's law.  Because the parties do not appear to disagree, and because the outcome of the court's choice-of-law analysis does not depend on further factual development that could come to light through discovery, the choice-of-law question will be decided now, and, once decided, will become law of the case.  See Nahass v. Harrison, 207 F. Supp. 3d 96, 102 (D. Mass. 2016) (engaging in choice-of-law analysis at the motion to dismiss stage); Adams v. Rubin, 964 F. Supp. 507, 508-09 (D. Me. 1997) (finding choice-

of-law analysis appropriate at motion to dismiss stage because it was determinative of whether plaintiffs could pursue their claims).

When, as here, jurisdiction in a federal court is based on diversity of citizenship, courts apply the choice-of-law rules of the forum state, which is New Hampshire. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). If another state has substantial interests in the litigation and its substantive law conflicts with New Hampshire law, the court must apply a five-factor test to determine which state's law governs the claims. Gen. Star Indem. Co. v. Beck, No. 18-cv-108-JD, 2018 WL 3849877, at *2 & n.6 (D.N.H. Aug. 13, 2018). If no conflict is identified, then the forum state's law applies. Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004); Valle v. Powertech Indus. Co. Ltd., --- F. Supp. 3d ---, 2019 WL 1437865, at *6 (D. Mass. Apr. 1, 2019); Aftokinito Props., Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010).

As defendants note, Pigulski's allegations in her complaint provide support for the application of New Hampshire law. Pigulski lives in New Hampshire, she sustained the injuries alleged in her complaint in New Hampshire, and defendants' actions occurred in New Hampshire. Pigulski's complaint does not suggest that any other state has an interest in this

litigation, and the parties make no argument that another state's law conflicts with the law of New Hampshire and should govern Pigulski's claims.  Defendants' passing reference to New Jersey in a footnote, without any elaboration, is not sufficient to require a choice-of-law analysis.  See, e.g., [Whipps, Inc. v. Ross Valve Mfg. Co., No. CIV.A. 14-40045-TSH, 2014 WL 1874754, at *8 n.2 (D. Mass. May 8, 2014)](#) (noting that mere "passing reference" to another state's law is insufficient to trigger a choice-of-law analysis).

Therefore, no choice-of-law analysis is necessary.  The law of the forum, New Hampshire, governs Pigulski's claims in this case.

## II.  Duplicative Claims

Defendants argue that under RSA 507-D:1, Pigulski cannot bring negligence-based claims that arise out of the same set of facts as her strict product liability claims.  They move to dismiss Pigulski's claims in Counts I (negligence); VI (negligent misrepresentation); VII (negligent infliction of emotional distress); and X (gross negligence) on that basis.

In addition, defendants move to dismiss Pigulski's claims in Counts VI (negligent misrepresentation); VII (negligent infliction of emotional distress); IX (CPA); and XIII (Breach of Implied Warranty), arguing that these claims are "merely

7

repurposed failure to warn claims," which Pigulski already alleges in Count III.

   A.   RSA 507-D:1

   RSA 507-D:1 provides the definition of "product liability action" as used in that chapter:

> "Product liability action" means any action brought for or on account of personal injury, death or property damage or other damage caused by or resulting from the development, manufacture, construction, design, formula, preparation, assembly, testing, warning, instructing, advertising, marketing, certifying, packaging, or labeling of any product. The term includes all such actions, regardless of the legal theory relied upon, whether strict liability in tort, negligence, breach of warranty, breach of or failure to discharge a duty to warn or instruct, misrepresentation, concealment, nondisclosure or any other theory whatsoever.

RSA 507-D:1, I. Defendants interpret that language as requiring the dismissal of Pigulski's negligence-based claims at this stage because they are duplicative of her strict product liability claims.

   Defendants' interpretation of RSA 507-D:1 is incorrect. Nothing in the definition restricts the theories under which product liability actions may be brought nor bars duplicative theories. Indeed, product liability actions brought under New Hampshire law often include both strict liability claims and related negligence claims. See State v. Exxon Mobil Corp., 168 N.H. 211, 248-51 (2015) (providing history of product liability

8

actions in New Hampshire); see also Connelly v. Hyundai Motor Co., 351 F.3d 535, 539-40 (1st Cir. 2003) ("The New Hampshire Supreme Court has consistently declined to adopt the rule urged by Hyundai—that a trial court may not instruct a jury on both strict liability and negligence counts in a product liability action."); Michnovez v. Blair, LLC, No. 10-cv-110-LM, 2012 WL 2627567, at *3-4 (D.N.H. July 5, 2012); Union Mut. Fire Ins. V. Hamilton Beach/Proctor-Silex, Inc., No. 05-cv-170-JD, 2006 WL 3782716, at *1 (D.N.H. Dec. 21, 2006). Indeed, defendants' interpretation of RSA 507-D:1 would run afoul of Federal Rule of Civil Procedure 8(d)(2), which permits a party to allege two or more claims alternatively or hypothetically.

Therefore, defendants have not shown that Pigulski's negligence-based claims are barred by RSA 507-D:1. The court notes, however, that as the litigation progresses, Pigulski may want to consider whether all of her claims are equally meritorious and whether it is in her best interest to take a more focused approach on her theories of relief. See, e.g., Batterman v. Leahy, 544 F.3d 370, 373 (1st Cir. 2008) ("A kitchen-sink complaint, unless dismissed for some central jurisdictional or pleading flaw, is likely to be hard slogging, requiring that counts be worked through one by one.")

B. Failure to Warn Claims

Defendants argue that Pigulski's claims for negligent misrepresentation, negligent infliction of emotional distress, CPA, and breach of implied warranty claims are duplicative of her failure to warn claim alleged in Count III.

Defendants' argument is somewhat unclear. They appear to argue not that the claims themselves are necessarily duplicative of Pigulski's failure to warn claim, but that the learned intermediary doctrine applies to each of the claims. In other words, defendants argue that because they can assert the same defense against Pigulski's failure to warn claim as they can against her claims in Counts VI, VII, IX, and XIII, the latter claims must be dismissed as duplicative of Pigulski's failure to warn claim.

Defendants' argument has two problems. The first is, as the court explained above, Pigulski is not precluded from bringing claims in the alternative. Indeed, the majority of cases defendants cite in support of their argument that the learned intermediary doctrine requires dismissal of Pigulski's "repackaged failure to warn" claims were decided well after the motion to dismiss stage. See doc. no. 13-1 at 7-8.

Regardless, as Pigulski notes, it is far from clear that the learned intermediary doctrine applies to her claims. If the doctrine applies in this case, its application would require a

10

much more developed analysis of the facts material to each claim and a showing, under New Hampshire law, that the claims are barred. Defendants have not provided sufficient grounds at this early stage to dismiss the claims on that basis.

III. Actionable Claims

Defendants contend that under New Hampshire law, Counts IV, VI, X, and XIII are not actionable for several reasons. Pigulski argues that all her claims other than her claim for gross negligence (Count X) should survive.

With regard to her gross negligence claim, Pigulski concedes that the claim is not cognizable under New Hampshire law. Although she reserves the right to reinstate the claim if another state's law applies to this case, for the reasons stated above, New Hampshire law governs Pigulski's claims. Therefore, Count X, the gross negligence claim, is dismissed.

   A.  Count VI - Negligent Misrepresentation

Defendants contend that Pigulski has not alleged a negligent misrepresentation claim because she alleges no facts to show that she relied on any misrepresentation made by defendants. Pigulski contends that the allegations in her complaint are sufficient to show reliance.

The elements of a negligent misrepresentation claim are "a negligent misrepresentation of a material fact by the defendant and justifiable reliance by the plaintiff." Wyle v. Lees, 162 N.H. 406, 413 (2011). An omission of a material fact is actionable only if the defendant had a duty to disclose the omitted information. Island Shores Estates Condo. Ass'n v. City of Concord, 136 N.H. 300, 306 (1992); Ingaharro v. Blanchette, 122 N.H. 54, 57 (1982).

In support of her claim, Pigulski points to her allegations that defendants marketed their products to patient consumers, in addition to medical providers, and that defendants stated their products are safer and more effective than other products. She also cites her allegation that the representations were intended to cause reliance and "caused Plaintiff to purchase, rely, use, and request the Pelvic Mesh Products." Doc. no. 1 at ¶ 67. She further alleges that "[m]embers of the medical community, including physicians and other healthcare professionals, as well as Plaintiff and the Public relied upon the representations and warranties of Defendants." Id. at ¶ 133.

Taking those allegations in the light most favorable to Pigulski, with reasonable inferences resolved in her favor, she alleges that she saw and was influenced by defendants' marketing of their products and requested that her surgeon use those products. Although the allegations border on being merely

conclusory statements of the elements of the cause of action, the factual reality underlying the claims would be better addressed in the evidentiary context of a summary judgment motion. Therefore, the allegations are sufficient to survive defendants' motion to dismiss.

B. Count XIII – Breach of Implied Warranty

Defendants contend that under the New Hampshire Uniform Commercial Code ("UCC"), RSA 382-A:2-607(3)(a), Pigulski was required to give them notice of a breach of warranty, which she did not do. Pigulski contends that defendants had constructive notice of the breach that she claims. She cites the multi-district litigation against defendants and safety notices from the Food and Drug Administration in 2008 and 2011 as providing constructive notice. Defendants argue that Pigulski cannot rely on those circumstances for notice because she did not allege them in her complaint.

Defendants do not provide any authority to show that notice is an element of a breach of warranty claim that must be alleged in a complaint, rather than a defense that may be later raised by a defendant. Regardless, the issue of what notice may be required, if any, of a breach of warranty under the UCC is disputed among the states. See [Keith v. Ferring Pharms., Inc., No. 15C10381, 2016 WL 5391224, at *6 (N.D. Ill. Sept. 27, 2016)](Keith v. Ferring Pharms., Inc., No. 15C10381, 2016 WL 5391224, at *6 (N.D. Ill. Sept. 27, 2016))

13

(noting the differences in state law as to what "constitutes reasonable notice and to whom notice should be given" for a breach of warranty under the UCC); BK Trucking Co. v. Paccar, Inc., No. 15-2282 (JBS/AMD), 2016 WL 3566723, at *7 (D.N.J. June 30, 2016) (same). Neither defendants nor Pigulski cite a dispositive New Hampshire case.

Given the basis of notice raised by Pigulski, this is a matter that would be better addressed through a properly supported motion for summary judgment. Therefore, defendants' motion to dismiss Count XIII is denied.

### C. Count IV – Strict Liability – Defective Product

Relying on Cheshire Med. Ctr. v. W.R. Grace & Co., 49 F.3d 26, 31 (1st Cir. 1995), defendants assert that New Hampshire recognizes strict product liability for manufacturing defects, design defects, and warning defects. They note that Pigulski alleges those claims in Counts II, III, and V of her complaint. Defendants contend that Pigulski's "defective product" claim in Count IV, however, is not a separate claim cognizable under New Hampshire law as set forth in Cheshire.

In response, Pigulski acknowledges the holding in Cheshire, noting that "to find a defective product, one necessarily needs to find for one of the other three claims." Doc. no. 15 at 14.

Nevertheless, she argues that the limitation recognized there "does not eliminate a defective product strict liability claim on its face."  Id.

Unlike many of her other claims which allege multiple theories of relief based on the same facts, it is not clear what Pigulski's theory for her fourth strict liability claim might be other than what is set forth in other claims.  In Count IV, Pigulski alleges that defendants' products "are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations of patients and their health care providers."  Doc. no. 1 at ¶ 108.  She further alleges that "[a]s a proximate result of defendants' design, manufacture, marketing, sale, and distribution of the Pelvic Mesh Products," she has been injured.  Id. at ¶ 110.

As such, Pigulski's claim in Count IV alleges a product liability claim based on both a manufacturing defect and design defect.  Those theories of liability, and nearly identical allegations, are set forth in support of Pigulski's claims in Count II – Strict Liability, Manufacturing Defect, and Count V – Strict Liability, Design Defect.  Pigulski makes no argument to show that she is alleging a distinct cause of action in Count IV as opposed to Counts II and V.  As a result, Pigulski does not

allege a separate claim in Count IV and defendants' motion to dismiss is granted as to that Count.[2]

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss (document no. 13) is granted as to Counts IV and X and is otherwise denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 24, 2019

cc: Counsel of Record

---

[2] In her objection, Pigulski asks the court to grant her leave to amend if any of her claims are dismissed. A request such as this should be made in a separate motion and not mentioned in passing as part of an objection to this motion to dismiss. See LR 7.1(a)(1). Pigulski's request to grant her leave to amend is thus denied on procedural grounds.